IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


RODNEY BLOCKER                                                                  PLAINTIFF

             v.                          Civil No. 6:08-cv-06020

SHERIFF LARRY SANDERS;
OFFICER DIGGS; and
CAPTAIN MEL STEED,
All of the Garland County
Detention Center                                                               DEFENDANTS


**MEMORANDUM OPINION**

        Plaintiff, Rodney Blocker (hereinafter Blocker), filed this action pursuant to the provisions

of 42 U.S.C. § 1983.  When the events at issue in this lawsuit occurred, Blocker was incarcerated

at the Garland County Detention Center (GCDC).  He maintains his constitutional rights were

violated when Defendants failed to protect him from attack by a fellow inmate.

        Defendants filed a motion for summary judgment (Doc. 20).  Despite having requested and

been granted two extensions of time to respond to the summary judgment motion (Docs. 25-26 &

Docs. 27-28), Plaintiff failed to file a response to the summary judgment motion.  The case is before

me pursuant to the consent of the parties (Doc. 10).

**I.  Background**

        Sheriff Larry Sanders (hereinafter Sanders) has been at all times relevant to this case the

elected Sheriff of Garland County.  *Defendants' Exhibit* (hereinafter *Defts' Ex.*) 1 at ¶ 5.  Captain

Mel Steed (hereinafter Steed) has at all times relevant to this case been the administrator of the

GCDC.  *Id.* at ¶ 1.  At all times relevant to this case, Deputy Diggs (hereinafter Diggs) was employed at the GCDC.  *Id.* at ¶ 4.

Blocker was arrested on September 26, 2007, on a number of criminal charges.  *Defts' Ex.* 1 at ¶ 12.  On January 29, 2008, he was sentenced to a ten year term of imprisonment at the Arkansas Department of Correction (ADC).  *Id.*  Blocker remained incarcerated at the GCDC until June 2, 2008, when he was transported to the ADC.  *Id.*

On January 16, 2008, at approximately 1:55 p.m., Diggs was handing out commissary in cell block 1A when he heard an inmate beating on the cell block door in another block.  *Defts' Ex.* 1 at ¶ 13.  Diggs took the commissary boxes out of the block so the inmates could not get into them.  *Id.*  He then ran to block 1B thinking the noise was coming from that block.  *Id.*  Once there, Diggs heard the beating again and realized it was coming from cell block 1D.  *Id.*

Diggs opened the door to block 1D and Blocker stepped out with blood on his face.  *Defts' Ex.* 1 at ¶ 13.  The blood appeared to be coming from a cut on Blocker's forehead, near his nose. *Id.*  When Blocker was asked who did it, he responded that he didn't know the inmate's last name but his first name was John.  *Id.*

Deputy Horner (hereinafter Horner) and Deputy Dunn reported to 1D.  *Defts' Ex.* 1 at ¶ 13. Blocker was escorted to the booking area so he could receive medical attention.  *Id.*

Horner assisted in locking down the cell block.  *Defts' Ex.* 1 at ¶ 13.  One of Blocker's cellmates at the time, Chris Swayze, who witnessed the fight, stated that inmate, John Griffin, cut Blocker with something during the fight.  *Id.*  Diggs contacted the criminal investigation division to do the necessary paperwork and take photographs of the cell.  *Id.*

Blocker was seen by Nurse Harmon and then transported to the emergency room at St.

-2-

Joseph's for treatment.  *Defts' Ex.* 1 at ¶¶ 13-14.  Blocker was treated and released back to the GCDC.  *Id.* at ¶ 14.  Blocker was given Ibuprofen, Listerine, Cephlexin, and Tramadal daily until January 29, 2008.  *Id.* at ¶ 15.

On January 29th, Blocker was seen by Dr. Hale for a follow-up visit.  *Defts' Ex.* at ¶ 16.  Dr. Hale checked Blocker's sutures, scheduled an x-ray, and removal of the sutures.  *Id.*  Dr. Hale also prescribed Ultracet which Blocker received until February 8th.  *Id.*

According to Steed, Garland County has in place a policy that requires inmates to be secure in their persons while incarcerated at the GCDC.  *Defts' Ex.* 1 at ¶ 6.  Specifically, he states:

> Garland County, by and through its employees, takes every available action necessary in order to secure the safety of all persons detained at the Detention Facility.  If the Detention Facility receives notice of a potential problem, inmates are either removed and placed in protective custody or separated from problem inmates.  Furthermore, regular jail checks occur constantly and visual observations occur at all times.  The Detention Facility has individual cells, and cameras and monitors are located within the cell area, and Officers personally inspect detainees and cell conditions on a regular basis at the Detention Facility.  In the event an inmate notifies an Officer of a potential problem, this problem is dealt with immediately.  Lastly, if an inmate provides the Detention Officer with an "enemy list," the detainee is not placed into a cell block area with a known "enemy."  Garland County does everything within its ability to insure the safety of all inmates while incarcerated at the Detention Facility.

*Defts' Ex.* 1 at ¶ 6.

Sanders had no conversations, or contact, with Blocker or involvement in any decision affecting the conditions of his incarceration at the GCDC.  *Defts' Ex.* 1 at ¶ 8.  Sanders had no direct or indirect participation in any of the complaints made by Blocker concerning his incarceration at the GCDC.  *Id.* at ¶ 9.  Other than possibly reviewing reports, Steed had no contact, or involvement, with Blocker during his incarceration at the GCDC.  *Id.* at ¶ 11.  While Diggs was on duty at the time of the incident and had some personal involvement in the situation, he had no notice prior to the

altercation of any potential problem in cell block.  *Id.* at ¶¶ 18-19.

## II.  Summary Judgment Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  We view all evidence and inferences in a light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Celotex v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

## III.  Discussion

Defendants have now moved for summary judgment.  First, Defendants contend there is no evidence that they failed to protect Blocker.  Second, Defendants Sanders and Steed contend there is no basis of liability on their behalf as they were not linked directly or indirectly to the alleged constitutional violation.  Finally, in the event the Court finds a constitutional violation exists, Defendants present the alternative argument that they are entitled to the defense of qualified immunity.

Due process "'protects pretrial detainees both from deliberate exposure to violence and from failure to protect when prison officials learn of a strong likelihood that a prisoner will be assaulted.'" *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988)(*quoting Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984)).  Similarly, the Eighth Amendment imposes a duty on the part of prison officials to protect convicted prisoners from violence at the hands of other prisoners.  *See e.g., Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998).  In addressing failure to protect claims

brought by pretrial detainees, the Eighth Circuit Court of Appeals has noted that pretrial detainees are entitled to at least as much protection as a convicted inmate and has applied Eighth Amendment analysis to claims brought both by pretrial detainees and convicted prisoners. *See Perkins*, 161 F.3d at 1129- 1130.   *See also Crow v. Montgomery*, 403 F.3d 598, 600 (8th Cir. 2005)(analyzing a pretrial detainee's failure to protect claim under the  same Eighth Amendment analysis used for similar claims brought by convicted prisoners); *Thomas v. Booker*, 784 F.2d 299 (8th Cir. 1986)(same).

In *Riley v. Olk-Long*, 282 F.3d 592 (8th Cir. 2002), the court stated:

An Eighth Amendment claim for failure to protect is comprised of two elements. First, an "inmate must show that [he] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, the inmate must establish that the defendant prison official recklessly disregarded that risk. *Jackson v. Everett,* 140 F.3d 1149, 1151 (8th Cir. 1998). "For the purposes of failure to protect claims, it does not matter ... whether a prisoner faces an excessive risk of attack for reasons personal to [him] or because all prisoners in [his] situation face such a risk." *Hott v. Hennepin County, Minn.,* 260 F.3d 901, 906 (8th Cir. 2001) (internal quotations omitted). The question is whether a prison official has a "sufficiently culpable state of mind," meaning that [he] is deliberately indifferent to an inmate's safety. *Farmer,* 511 U.S. at 834 (internal quotation omitted). The prison official's state of mind is measured by a subjective, rather than an objective, standard. *Id.* at 838-39; *see also Jackson,* 140 F.3d at 1152 ("[D]eliberate indifference must be viewed from [defendant's] perspective at the time in question, not with hindsight's perfect vision."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference." *Farmer,* 511 U.S. at 837.

*Riley,* 282 F.3d at 595.  *See also Krein v. Norris*, 309 F.3d 487 (8th Cir. 2002)

Thus, to prevail on his failure to protect claim, Blocker must show: (1) that his incarceration posed a substantial risk of serious harm, and (2) the Defendants knew of and disregarded an excessive risk to his safety.  *Pagels v. Morrison*, 335 F.3d 736, 740 (8th Cir. 2003).

To establish the second component, Blocker must show that Defendants acted, or failed to act, with deliberate indifference to his safety. *Id.* Negligence is not sufficient. *Id.* Even if the conduct was unreasonable, this is not enough because "reasonableness is a negligence standard." *Id.* at 742 (internal quotation marks and citation omitted). Further, the United States Court of Appeals for the Eighth Circuit has noted that "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Id.* at 740-741 (internal quotation marks and citation omitted).

In *Perkins v. Grimes*, 161 F.3d 1127 (8th Cir. 1998), the district court "agreed that defendants were on notice that Wilson was a disruptive inmate," but found defendants "had no notice that Wilson posed a threat of serious injury to Perkins because Perkins did not effectively alert them that he faced such a threat." *Id.* at 1130. Further, the district court found that "the defendants periodic cell checks yielded no information that would have put them on such notice." *Id.* The Eighth Circuit Court of Appeals found no clear error. *Id.* It noted that "[a]lthough the testimony indicated that Wilson was an easily provoked detainee, the evidence also shows that Perkins and Wilson had previously been housed together without incident and that Perkins' jailers neither knew, or had reason to know, that Wilson was a violent sexual aggressor, either on this or on a previous occasion." *Id.*

As noted above, Blocker failed to respond to the summary judgment motion. Thus, Defendants' statement of material facts, affidavit, and attached exhibits are uncontradicted. These materials indicate Defendants neither knew of, or had reason to know, that Griffin posed a safety

hazard to Blocker or anyone else in the cell block.  Nor is there any indication in the summary

judgment materials that other inmates had successfully hidden razor blades or other dangerous items

from detention center personnel and then used the items as weapons.

Moreover, as Defendants accurately point out, there is no evidence of personal involvement

on the part of Sanders or Steed.  *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 397 (8th Cir.

2007)(no *respondeat superior* liability under § 1983–no liability merely because official employs

the individual who allegedly violated the plaintiff's constitutional rights); *Clemmons v. Armontrout*,

477 F.3d 962, 967 (8th Cir. 2007)("[A] warden's general responsibility for supervising the

operations of a prison is insufficient to establish personal involvement.");  *Mark v. Nix*, 983 F.2d

138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or

responsibility).   Further, the record in this case is devoid of any suggestion of the existence of a

custom or policy on which to hold Garland County liable.  *See Monell v. Dep't of Soc. Servs. of New*

*York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)(holding that a plaintiff seeking to

impose § 1983 liability on a municipality must show an official policy or a widespread custom or

practice of unconstitutional conduct that caused the deprivation of the plaintiff's constitutional

rights).  In short, there is nothing to suggest Blocker's alleged constitutional deprivation was caused

by a custom or policy of Garland County.  See *e.g., Pietrafeso v. Lawrence County*, 452 F.3d 978,

982 (8th Cir. 2006)("A county is liable if an action or policy itself violated federal law, or if the

action or policy was lawful on its face but led an employee to violate a plaintiff's rights [and] was

taken with 'deliberate indifference' as to its known or obvious consequences.")(internal quotation

omitted)).

### IV.  Conclusion

For the reasons stated, Defendants' motion for summary judgment (Doc. 20) will be granted by a separate judgment entered concurrently with this opinion.

DATED this 3rd day of December 2009.


/s/ Barry A. Bryant
BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE